**WO**                                                                                                               **JWB**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rafael Carrisoza Rivera, | No. CV 07-8043-PCT-SMM (MHB) |
| Plaintiff, | **ORDER** |
| vs. | |
| Management & Training Corp., et al., | |
| Defendants. | |

Before the Court are Defendant Elliot's Motion to Dismiss, Plaintiff's response, Elliot's reply, and Plaintiff's sur-reply (Doc. ## 14, 19, 21, 24). Defendants Jump, Malone, and Soulvie joined Elliot's Motion and filed their own Motion to Dismiss (Doc. # 28). Plaintiff responded, Defendants replied, and Plaintiff filed a sur-reply (Doc. ## 32, 33, 37). The Court will deny the motions.

**I.     Background and Parties' Contentions**

Plaintiff filed this action on July 3, 2007, and filed his First Amended Complaint on September 21, 2007 (Doc. # 8). Plaintiff named as Defendants Management & Training Corporation's (MTC) Kingman Unit Warden Darla Elliot and Arizona Department of Corrections (ADC) employees Deputy Warden Sean Malone, Warden Jerry Soulbe, and Classification Officer Marvin Jumpe.[1] In Count I of the First Amended Complaint, Plaintiff

---

[1] The MTC is a private prison corporation that incarcerates ADC inmates at its Kingman, Arizona facility pursuant to a contract between MTC and ADC (Doc. # 14 at 2).

alleged that his Eighth Amendment rights were violated when he was housed in a unit where he was the only Mexican National and was attacked by other inmates. Plaintiff further claimed Defendants were aware of the danger of housing a Mexican National inmate with other races, but they failed to find an alternate housing assignment for Plaintiff. Plaintiff sought monetary damages.

On December 21, 2007, Elliot filed a Motion to Dismiss for failure to exhaust administrative remedies. Elliot claimed that Plaintiff never filed a single grievance while incarcerated at the Kingman facility and therefore Plaintiff's First Amended Complaint must be dismissed (Doc. # 14). Plaintiff responded to Elliot's motion, contending that he filed an informal resolution—the first step of the ADC's grievance procedure—on September 6, 2005, the day of the assault. Plaintiff further claimed that he was transferred to the Pima County Jail on September 16, 2005, before he received a response to his informal resolution. Plaintiff averred that he remained in the Pima County Jail until March 31, 2006, preventing him from exhausting his administrative remedies through ADC (Doc. # 19). Plaintiff then submitted copies of his attempt to informally resolve his issue (Doc. # 20). Elliot replied in support of her motion, contending that because Plaintiff acknowledged that he did not file any formal grievances during his incarceration, his First Amended Complaint must be dismissed. Specifically, Elliot contended that Plaintiff should have filed a formal grievance during the 10 day period between the alleged assault and his transfer to the Pima County Jail (Doc. # 21 at 2). Alternatively, Elliot argued that Plaintiff has failed to explain why he did not attempt to grieve his claim upon his return to the Kingman facility in March 2006 (id. at 3). In a sur-reply, Plaintiff claimed that ADC grievance procedures require an inmate to attempt to informally resolve an issue before submitting a formal grievance and that before he received a response to his informal resolution, he was transferred (Doc. # 22).

Malon, Soulbe, and Jumpe (the State Defendants) joined Elliot's motion (Doc. # 28). In the alternative, they also moved to dismiss Plaintiff's First Amended Complaint for failure to state a claim (id.). The State Defendants argued that the First Amended Complaint does

1  not meet the pleading standard set forth in Bell Atlantic Corp. v. Twombly, __ U.S. __, 127
2  S.Ct. 1955, 1974 (2007).

3  Plaintiff responded, reiterating his arguments related to exhaustion and articulating
4  that the State Defendants knew of racial tensions between Mexican Nationals and inmates
5  of other races, such that Mexican Nationals were routinely housed separately from inmates
6  of other races to prevent fighting (Doc. # 32).  In reply, the State Defendants argued that
7  Plaintiff failed to exhaust because Plaintiff failed to resume the grievance procedure upon
8  his return to ADC custody.  The State Defendants also argued that Plaintiff's attempt to
9  amend his First Amended Complaint with new allegations in his response does not alter the
10 conclusion that Plaintiff's First Amended Complaint fails to state a claim (Doc. # 33).

11 Plaintiff again filed a sur-reply to the State Defendants' reply (Doc. # 37).  Plaintiff
12 argued that the ADC grievance procedure articulates that the entire grievance process should
13 take no more than 100 days to complete.  Consequently, Plaintiff contended that he could not
14 resume the grievance process upon his return to ADC because it would have been outside the
15 established timeframes (id.).

16 **II.     Exhaustion**
17     **A.     Legal Standard**
18 A prisoner must first exhaust "available" administrative remedies before bringing an
19 action.  See 42 U.S.C. § 1997e(a); Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir.
20 2006); Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005).  He must complete the
21 administrative review process in accordance with the applicable rules.  See Woodford v.
22 Ngo, 126 S. Ct. 2378, 2384 (2006).  Exhaustion is required for all suits about prison life,
23 Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through
24 the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001).

25 Exhaustion is an affirmative defense.  Jones v. Bock, 549 U.S. __, 2007 WL135890,
26 at *11 (Jan. 22, 2007).  Defendants bear the burden of raising and proving the absence of
27 exhaustion.  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Exhaustion is a matter
28 of abatement in an unenumerated Rule 12(b) motion.  Id. at 1119-20.  Although the Ninth

1 Circuit recognized that a matter in abatement is "closely analogous" to summary judgment,
2 the court of appeals noted two main differences: (1) summary judgment is on the merits but
3 exhaustion is not; and (2) summary judgment does not permit the court to resolve disputed
4 issues of fact but exhaustion does. <u>Id.</u> at 1119-20 n. 14.  When an exhaustion issue is raised
5 in a motion for summary judgment, the court should treat it as an unenumerated motion under
6 Rule 12(b). <u>Ritza v. Int'l Longshoremen's & Warehousemen's Union</u>, 837 F.2d 365, 368-69
7 (9th Cir. 1988).  Therefore, to the extent that Defendants seek summary judgment on the
8 issue of exhaustion, the Court will construe Defendants' motion as an unenumerated motion
9 under Rule 12(b).

10 Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion,
11 a court may look beyond the pleadings to decide disputed issues of fact.  <u>Wyatt</u>, 315 F.3d at
12 1119-20.  Further, a court has broad discretion as to the method to be used in resolving the
13 factual dispute.  <u>Ritza</u>, 837 F.2d at 369 (quotation omitted).

### B.     ADC Grievance Procedure

15 In order to properly grieve an issue, the inmate must first submit a complaint (informal
16 resolution) to their assigned Correctional Official III (CO III).  Department Order (DO)
17 802.08.  If the CO III can not resolve the complaint, the inmate may submit a formal Inmate
18 Grievance to the Institution/Unit Grievance Coordinator.  DO 802.08, 802.09.  The inmate
19 may appeal the Grievance Coordinator's decision to the Warden or Deputy Warden.  DO
20 802.08.  If the Warden or Deputy Warden cannot resolve the grievance, the inmate may
21 appeal that decision to the Director.  DO 802.08.  The Director's response is final.  DO
22 802.08 (Doc. # 14, Ex. 1 ¶¶ 7-17).

### C.     Analysis

24 As stated, Defendants bear the burden of demonstrating the absence of exhaustion.
25 There is no dispute that Plaintiff did not fully exhaust his claim that Kingman Unit officials
26 were deliberately indifferent to Plaintiff's safety by knowingly housing him with inmates of
27 other races, leading to an assault.  But Plaintiff need only exhaust available remedies.
28 <u>Brown</u>, 422 F.3d at 934-35.  Elliot contends that Plaintiff offers no argument as to why he

- 4 -

did not submit a formal grievance between September 6, 2005—the date of the assault—and September 16, 2005—the date he was transferred to the Pima County Jail (Doc. # 21 at 2-3). Elliot's argument completely ignores established ADC policy and is unavailing. Elliot's own affiant stated that the grievance procedure mandates that an inmate attempt to informally resolve any issue before submitting a formal grievance (Doc. # 14, Ex. 1, Morris Aff., ¶ 7). ADC policy also states that a CO III should provide a response to an informal resolution within 10 workdays of the complaint. Plaintiff submitted an informal resolution on the day of the assault—September 6, 2005 (id. ¶ 8). Plaintiff, therefore, could not have submitted a formal grievance on this issue until September 20, 2005 *at the earliest*.[2] It is undisputed that Plaintiff was transferred on September 16, 2005. Consequently, Plaintiff could not have filed a formal grievance on this issue before the CO III's time to respond had expired. Indeed, if he had, ADC could have rejected the grievance as premature.

Defendants do not argue that Plaintiff should have proceeded to the next step in the grievance procedure from the Pima County Jail. Nor could they—there are no provisions in the ADC grievance procedure for filing grievances outside ADC's custody. Instead, Defendants contend that Plaintiff should have started the grievance process anew upon his transfer back to ADC custody on March 31, 2006. But, again, this ignores the ADC requirement that any complaint must be initiated within 10 days of the incident. Plaintiff's complaint would have been submitted nearly *seven months* later, well outside established ADC time frames.

The Court concludes that Plaintiff's transfer outside ADC custody rendered the grievance procedure unavailable for the claim in Plaintiff's First Amended Complaint. Elliot's Motion to Dismiss will therefore be denied.

///

///

---

[2] 10 *workdays* from September 6, 2005 is September 20, 2005. "Workdays" is contrasted with the use of the term "calendar days" in other provisions of the ADC grievance procedure. Compare DO § 802.08 with DO § 802.09.

### III. Motion to Dismiss

The State Defendants have moved to dismiss Plaintiff's First Amended Complaint for failure to state a claim. A motion to dismiss under Rule 12(b)(6) is almost never an appropriate response when the court has already screened a prisoner complaint pursuant to 28 U.S.C. § 1915A(b) and directed the defendants to respond. The standard for dismissal under Rule 12(b)(6) ("failure to state a claim upon which relief can be granted") is virtually identical to the standard under 28 U.S.C. § 1915A(b) ("fail[ure] to state a claim upon which relief may be granted"). After the Court has screened a prisoner complaint pursuant to § 1915A(b), a Rule 12(b)(6) motion to dismiss will be granted only if the defendant can convince the Court that reconsideration is appropriate.

Nothing in the State Defendants' Motion to Dismiss causes the Court to reconsider its prior determination that the First Amended Complaint stated a claim upon which relief can be granted. To ultimately prevail on his deliberate indifference claim, Plaintiff must present evidence to support his allegations. But at this stage of the litigation, Plaintiff's allegations are sufficient to state a claim. Accordingly, the State Defendants' Motion to Dismiss will be denied.

**IT IS HEREBY ORDERED:**

(1) Defendant Elliot's Motion to Dismiss (Doc. # 14) is **denied**.

(2) The State Defendants' Motion to Dismiss (Doc. # 28) is **denied**.

(3) Elliot is directed to file her Answer to the First Amended Complaint within 10 days of this Order.[3]

DATED this 10th day of June, 2008.

Stephen M. McNamee
United States District Judge

---

[3] The State Defendants filed their Answer on December 21, 2007 (Doc. # 15).